## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **DAVID L. PENNELL, et. al.,** | ) | **CASE NO.   5:09CV485** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **JUDGE PETER C. ECONOMUS** |
| **v.** | ) | |
| | ) | |
| **THE HARTFORD LIFE &** | ) | **MEMORANDUM OPINION** |
| **ACCIDENT INSURANCE CO.,** | ) | **AND ORDER** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

This matter is before the Court upon the Motion for Judgment on the Administrative Record (Dkt. # 21) filed by Defendant Hartford Life and Accident Insurance Company ("Hartford") and the Motion for Summary Judgment (Dkt. # 22) filed by Plaintiffs David L. Pennell and Christopher A. Pennell.  Also before the Court is Plaintiffs' Response to Defendant's Motion for Judgment on the Administrative Record (Dkt. # 23) and Defendant's Opposition to Plaintiffs' Motion for Summary Judgment (Dkt. # 24).   The instant motions seek to determine whether, under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 ("ERISA"), Defendant may offset Plaintiff David Pennell's Long Term Disability ("LTD") benefits by the amount of Dependent Social Security Disability ("DSSD") benefits awarded to Plaintiff's minor son Christopher Pennell.

# I. FACTUAL BACKGROUND

Plaintiff David Pennell was formerly employed by Fed Ex Freight East, Inc. ("FedEx").  While working for FedEx, David Pennell was diagnosed with diplopia and migraine headaches.  (Dkt. # 20-3 at 35-36).  He applied for and began receiving LTD benefits in late 2002 pursuant to a long-term disability policy ("the Plan") issued by Hartford in the amount of $3,418.58 a month.  (Dkt. # 20-1 at 7).  Pennell also applied for Social Security Disability benefits in both 2003 and 2005, but was denied each time. (Dkt. # 20-3 at 9; Dkt. # 20-2 at 90).

The plan issued by Hartford provides that Other Income Benefits ("OIB") must be deducted from the insured's monthly benefit as calculated under the Plan.  (Dkt. # 20-4 at 9).  OIB are defined as "the amount of any benefit for loss of income, provided to [the insured] or [the insured's] family, as result of the period of Disability for which you are claiming benefits under this plan."  (Dkt. # 20-4 at 19).  The Plan specifies that "[t]his includes any such benefits pursuant to any: . . . disability benefits under: The United States Social Security Act . . . ."  (Dkt. # 20-4 at 19).  The Plan also provides that "[Hartford] may make a retroactive allocation of any retroactive Other Income Benefit. A retroactive allocation may result in an overpayment of [the insured's] claim."  (Dkt. # 20-4 at 20).  An overpayment occurs when the amount paid in benefits is more than the amount entitled to under the Plan.  "This includes, but is not limited to, overpayments resulting from: 1. Retroactive awards of Other Income Benefits. . . ."  (Dkt. # 20-4 at 16). The Plan additionally states that "[Hartford has] the right to recover from [the insured]

any amount that is an overpayment of benefits under this plan.  [The insured] must refund to [Hartford] the overpaid amount."  (Dkt. # 20-4 at 16).

After David Pennell began receiving LTD benefits from Hartford, he was also diagnosed with dystonia.  Pennell reapplied for Social Security Disability benefits following this additional diagnosis, and was approved in 2008 by the Social Security Administration ("SSA").  He was awarded benefits retroactive to December 2003 in the amount of $1646.80 per month.  Additionally, David Pennell's minor son Christopher Pennell was awarded DSSD benefits in the amount of $823.40 per month.  As a result of the Social Security award, Hartford requested repayment in the amount of $126,857.00 under the overpayment provision for the period from December 2003 through April 2008. (Dkt. # 20-1 at 29-31).  Subsequently, the SSA revised the effective date of Plaintiffs' benefits, and awarded benefits retroactive to December 2002.  (Dkt. # 20-1 at 91, 101). Under the new calculation, David Pennell was awarded $1594.70 per month, and Christopher Pennell was awarded $797.30 per month.  The SSA then increased the award to David Pennell to $1613.00 per month and to Christopher to $806.50 per month, effective January 2003.  (Dkt. # 20-1 at 91; Dkt. # 20-4 at 33).

Hartford then revised its repayment request to $143,211.20 to account for the new effective date and revised award amounts.  Hartford's overpayment request covers the period from December 2002 to February 2009.  (Dkt. # 20-4 at 35-38).  Plaintiffs filed a lawsuit in the Stark County Court of Common Pleas on January 29, 2009, which was removed to this Court on March 4, 2009, arguing that Defendant may not seek repayment for the amount of DSSD benefits awarded to Christopher Pennell.  Plaintiffs request

3

declaratory relief to determine the rights and responsibilities of the parties under Defendant's LTD policy.  (Dkt. # 1).  At a case management conference before this Court on Wednesday July 8, 2009, the parties agreed that the instant matter was suitable for resolution by summary judgment, and thus the parties filed the instant cross motions. (Dkt. # 15).  Defendant filed a Notice of Filing Administrative Record (Dkt. # 20), as well as a Motion for Judgment on the Administrative Record (Dkt. # 21) on September 23, 2009.  On September 24, 2009, Plaintiffs filed a Cross-Motion for Summary Judgment.  (Dkt. # 22).  Plaintiffs then filed a Response to Defendant's Motion for Judgment on the Administrative Record (Dkt. # 23) on October 23, 2009, and Defendant filed an Opposition to Plaintiffs' Motion for Summary Judgment (Dkt. # 24) on October 26, 2009.

## II. LAW AND ANALYSIS

### A. Standard of Review

#### 1. Summary Judgment

Summary judgment is appropriate only where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P.56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 321 (1986).  The inquiry for the Court is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  In short, "[t]he respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary

4

judgment.'"  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Anderson, 477 U.S. at 250).  Even though both parties in the instant matter have moved for summary judgment and thus argue that no genuine issue of material fact exists, this Court must still review each party's motion separately to determine whether either party has carried its burden under the summary judgment standard.  Lee v. Dayton Power & Light Co., 604 F. Supp. 987, 993 (S.D. Ohio 1985).

### 2. ERISA

Plaintiffs' amended Complaint seeks a declaratory judgment to determine whether Defendant is entitled to offset the DSSD benefits awarded to Christopher Pennell, whether Defendant is entitled to offset any cost of living increases with respect to both Plaintiffs, and to determine the amount of overpayment, if any, Defendant is entitled to under the Plan.  (Dkt. # 18 at 5).  ERISA's preemption clause states that ERISA "shall supersede any and all State laws insofar as they may not or hereafter related to any employee benefit plan."  29 U.S.C. § 1144(a).  The Supreme Court has held that Congress intended ERISA to provide an exclusive remedy and therefore that ERISA has "extraordinary pre-emptive power."  Aetna Health Inc. v. Davila, 542 U.S. 200, 209 (2004) (quoting Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 65-66 (1987)).  Therefore, Plaintiffs' claims are preempted, and so this Court will construe the instant matter to be an action under ERISA's civil enforcement statute.  See 29 U.S.C. 1132(a).

In cases governed by ERISA, district courts either apply a *de novo* or arbitrary and capricious standard of review in summary judgment procedures.  A district court may review a benefit determination made by an ERISA plan administrator *de novo* if a plan

5

does not otherwise specify.  McDonald v. Western-Southern Life Ins. Co., 347 F.3d 161, 168 (6th Cir. 2003).  However, if a plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the court must review a decision to deny benefits under an arbitrary and capricious standard of review. Wilkins v. Baptist Healthcare Sys., 150 F.3d 609, 613 (6th Cir. 1998) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)).  In situations in which the plan administrator both evaluates claims for benefits and pays those benefits, that conflict of interest must be weighed as a factor in whether the administrator abused its discretion and thus acted arbitrary and capriciously.  Metro Life Ins. v. Glenn, 128 S. Ct. 2343, 2347-48 (2008); Whitaker v. Hartford Life & Accident Ins. Co., 404 F.3d 947, 949 (6th Cir. 2005).  Under the arbitrary and capricious standard of review, the plan administrator's decision must stand unless it was "without reason, unsupported by substantial evidence or erroneous as a matter of law."  Fahringer v. Paul Revere Ins. Co., 317 F. Supp. 2d 504, 510 (D.N.J. 2003) (quoting Abnathya v. Hoffman-LaRoche, Inc., 2 F.3d 40, 45 (3d Cir. 1993)).

### 3. Contract Interpretation

In the instant matter, the parties agree that David Pennell and Christopher Pennell were awarded Social Security benefits as a result of David's disability and that Hartford claims to be owed a repayment based on that award.  The parties also agree that David Pennell must repay the amount of Social Security benefits awarded to himself.  The remaining point of disagreement is whether the Plan requires Plaintiffs to repay the DSSD benefits paid to Christopher Pennell.  Because the parties agree to the basic facts,

the question of whether the ERISA plan allows for a set off for DSSD benefits is a question of law.  Thus, to determine the rights of the parties this Court must look to the contractual language of the Plan.

It is a general rule of contract interpretation that the court must adhere to the plain language of the contract as it would be construed by an ordinary person.  Morgan v. SKF USA, Inc., 385 F.3d 989, 992 (6th Cir. 2004).  That general rule also applies in the instant matter, because "[f]ederal law gives effect to straightforward language in ERISA-governed plans."  Lake v. Metro. Life Ins. Co., 73 F.3d 1372, 1379 (6th Cir. 1996).  The question of whether an ERISA plan's language is straightforward or ambiguous is a question of law.  In re Unisys Corp. Long-term Disability Plan ERISA Litig., 97 F.3d 710, 715 (3d Cir. 1996).

Generally under the rule of *contra proferentem*, where contract terms are ambiguous, courts construe ambiguities against the drafter, or in this context, the insurer.  Bush v. Metro. Life Ins. Co., 665 F.2d 231, 233 (6th Cir. 1981).  However, while the rule is appropriate in ERISA cases when using a *de novo* standard of review, it "is inconsistent with a deferential review standard under which the plan administrator is given wide latitude to interpret plan language."  Peach v. Ultramar Diamond Shamrock, 229 F. Supp. 2d 759, 766 (E.D. Mich. 2002) (citing Morton v. Smith, 91 F.3d 867, 871 n.1 (7th Cir. 1996)).  Furthermore, a "mere disagreement" between parties as to how the contract should be interpreted "does not create ambiguity in the legal sense."  Perez v. Aetna Life Ins. Co., 150 F.3d 550, 557 n.7 (6th Cir. 1998).

7

**B. Dependent Social Security Disability Benefits**

1. Cost of Living Adjustments

Plaintiffs, in their Motion for Summary Judgment, argue that under the terms of the LTD policy, Defendant may not reduce the LTD benefits awarded on the basis of cost of living increases awarded by the SSA.  (Dkt. # 22-2 at 9).  Defendant argues that the overpayment calculation did not include any cost of living increases.  (Dkt. # 21 at 4).

The Plan expressly excludes from the definition of OIB increases which "take[] effect after the date benefits become payable under this plan" and "general increase[s] which appl[y] to all persons who are entitled to such benefits."  (Dkt. # 20-4 at 20). Therefore, it is clear from the terms of the Plan that Defendant may not include the Social Security cost of living increases because they took effect after the LTD benefits became payable and because they are general increases which apply to all people who are entitled to Social Security benefits.  However, Defendant's calculation of the overpayment did not take into account cost of living increases.  (Dkt. # 20-1 at 31; Dkt. # 20-4 at 37-38). Therefore, Plaintiffs' argument with respect to this issue is moot.

2. Public Policy

Plaintiffs argue that allowing the Plan to offset LTD benefits by DSSD benefits would be unconscionable and contrary to public policy.  (Dkt. # 22-2 at 8-9).  However, it is well established that plans containing set off provisions for Social Security benefits received by the insured or his family do not contravene public policy.  First Unum Life Ins. Co v. Wulah, Case No. 06-1749, 2007 U.S. Dist. LEXIS 82650, at *23 (S.D.N.Y Oct. 8, 2007) (collecting cases).  ERISA-governed plans are simply regular contracts, and

8

there is nothing in the Social Security Act to suggest that an employer cannot bargain to allow for an adjustment based on Social Security benefits awarded.  <u>Lamb v. Conn. Gen. Life Ins. Co.</u>, 643 F.2d 108, 112 (3d Cir. 1981).  In fact, approximately half of the Fortune 500 Company LTD plans provide for offsets for Social Security Disability Benefits paid to dependents.  <u>In re Unisys Corp.</u>, 97 F.3d at 715.

In support of their assertion, Plaintiffs cite two Ohio Supreme Court cases.  In the first, <u>Hayes v. Oakridge Home</u>, 908 N.E.2d 408 (Ohio 2009), the court held that an arbitration agreement made by a 95 year old nursing home resident waiving a right to trial, to punitive damages, and to attorneys' fees was neither substantively nor procedurally unreasonable.  <u>Id.</u> at 416.  Similarly, the court in <u>Taylor Bldg Corp. of Am. v. Benfield</u>, 884 N.E.2d 12 (Ohio 2008), held that an arbitration clause in a construction contract was not substantively or procedurally unconscionable.  <u>Id.</u> at 28.  Both cases dealt with arbitration agreements, which are not at issue in the instant matter, and neither case mentioned Social Security or the holding's applicability in that context.  However, given that the court did not find either contract to be contrary to public policy, even if this Court were to apply the holdings of <u>Hayes</u> and <u>Benfield</u>, this Court would reject Plaintiffs' argument that Defendant's interpretation of the plan is contrary to public policy.  Therefore, because there is nothing in the Social Security Act to indicate that employers may not set off benefits using DSSD awards, and Plaintiffs can provide no authority to the contrary, this Court finds that Defendant's Plan does not contravene public policy.

3. Plan Terms

The Plan issued by Defendant subtracts from the insured's monthly benefits Other Income Benefits, defined as "the amount of any benefit for loss of income, provided to you or your family, as result of the period of Disability for which you are claiming benefits under this plan," including Social Security benefits.  (Dkt # 20-4 at 19).  The parties agree that the Plan provides for a set off for the Social Security benefits awarded to David Pennell, but disagree whether the DSSD benefits given to Christopher Pennell are covered under the definition of OIB.

Plaintiffs argue that DSSD benefits are not paid to a minor child *for loss of income*, and, therefore, do not qualify as OIB that can be used to offset an award of LTD benefits.  Defendant, on the other hand, argues that because the Plan explicitly specifies that OIB include any benefits provided to the insured *or his family*, the Plan allows for a set off for DSSD benefits paid to the insured's minor son.  The plan administrator determined that the Plan allowed the DSSD benefits to offset the LTD benefits, and its decision must be reviewed under an arbitrary and capricious standard.

Defendant, in its Motion for Judgment on the Administrative Record, relies primarily on Hampton v. Dana Corp., 152 F. App'x. 441 (6th Cir. 2005), for its argument that the Plan allows for a set off for DSSD benefits.  In Hampton, the Sixth Circuit affirmed a decision allowing the administrator to reduce LTD benefits because of Social Security benefits awarded to a dependent.  Id. at 444.  While, as Plaintiffs point out, the Plan does not specifically require the benefit to have been paid for loss of income, the Sixth Circuit comments that "[t]he purpose of the plan is to replace *income* that is *lost*

10

because of the employee's disability." Id. (emphasis added).  This is consistent with the policy of the Social Security Act, which Congress enacted "to grant benefits to children to alleviate economic hardship facing families *who have lost a wage earner due to disability*."  McAninch for McAninch v. Bowen, 693 F. Supp. 353, 355 (W.D. Penn. 1988) (emphasis added).

One plan similar to the instant matter stated, "if Social Security makes an award, UNUM will reduce your monthly policy benefit by the amount of Social Security benefits you and your spouse and family receive . . . ."  UNUM Life Ins. Co. of Am. v. Brandon, Case. No. 98-2835, 1999 U.S. Dist. LEXIS 16283, at *3 (N.D. Texas October 18, 1999).  The court found that the agreement unambiguously allowed for a set off for Social Security Disability benefits paid both to the employee and her son.  Id. at *3-*5.  However, the plan in Brandon, like Hampton, did not explicitly require the benefits to be paid for loss of income, and so while persuasive, does not definitively resolve the issue in the instant matter.

In another case with facts nearly identical to the instant matter, the court allowed a set off for DSSD benefits.  Fortune v. Group Long Term Disability Plan, 637 F. Supp. 2d 132 (E.D.N.Y. 2009).  The plan in Fortune defined "Other Income Benefits" as "any benefit *for loss of income*, provided to you or your family, or to a third party on your behalf as a result of the period of disability for which you are claiming benefits under this plan," which is indistinguishable from the language in the instant matter.  Id. at 145.  The court determined that the "plain, clear, and unambiguous import of [the Plan's relevant provisions] is that Hartford is permitted to offset Fortune's long-term disability benefits

11

by the amount in [Social Security Disability Insurance] benefits she and her dependent children receive because of her disability."  Id. (quoting Fortune v. Group Long-Term Disability Plan for Employees of Keyspan Corp., 588 F. Supp. 2d 339, 341 (E.D.N.Y. 2008) (denying a motion to amend)).

Several courts have interpreted language similar to Defendant's Plan to unambiguously allow LTD benefits to be reduced by the amount of DSSD benefits paid to an insured's dependent.  Thus, it would not be arbitrary or capricious for a plan administrator to determine that Social Security benefits awarded to dependents are given for "loss of income" of the parent on account of their disability.

Plaintiffs, in their Motion for Summary Judgment, rely on several cases for their argument that OIB does not include DSSD benefits.  Plaintiffs rely most heavily on Carstens v. U.S. Shoe Corps. Long-Term Bens. Disability Plan, 520 F. Supp. 2d 1165 (N.D. Cal. 2007).  In Carstens the plan provided for set offs based on payments payable to the employee or his family "on the basis of the Employee's employment and earnings record."  Id. at 1166.  The court determined that the LTD benefits could not be offset by the Social Security payments made to dependent children because they are not compensation for "loss of time," because compensation for the disability and compensation for loss of time are separate.  Id. at 1167.  However, the court in Carstens did recognize that dependent benefits "are designed to replace the support these children would have received had their parent continued to work."  Id. at 1169.  Therefore, the benefits are awarded because of the income the parent loses by their disability, even if the benefits are not paid directly paid to the child for loss of income of the parent.

12

Plaintiffs also cite Social Security cases in other contexts in an attempt to show that DSSD benefits do not represent a loss of income.  However, the cases they cite are inapposite to the instant matter.  Fuller v. Fuller, 49 Ohio App. 2d 223 (Ohio Ct. App. 1976), held that dependent Social Security benefits inure directly to the child and are not ever owned by the parent.  Id. at 225.  However, in the instant matter, DSSD benefits could be paid for loss of income to the parent without being owned by the parent.  Furthermore, Carpenter v. Reis, 109 Ohio App. 3d 499 (Ohio Ct. App. 1996), involving a child support schedule, recognized that the reasoning in Fuller is no longer followed in Ohio.  Id. at 506.

Another case cited by Plaintiffs is In re Marriage of Anthony-Guillar, 207 P.3d 934 (Colo. Ct. App. 2009), which held that disability payments awarded to a child based on the parent's disability could not be used to calculate the parent's gross income because the benefits were not "actually received" by the parent as required by statute.  Id. at 942.  Similarly, in Meeks v. Mutual of Omaha, 388 N.E.2d 1362 (Ill. Ct. App. 1979), the court refused to allow a set off for dependent benefits where the plan specified that the LTD benefits could be offset only by payments made to a "protected person" or to "any other person on his behalf."  Id. at 1363.  Another plan which was found not to allow set offs for DSSD benefits provided that the "LTD benefit you receive may be adjusted if *you receive* . . . disability income from other sources . . . ."  In re Unisys Corp., 97 F.3d at 715 (emphasis added).  All of these cases require that the insured, or the "protected person," be the one actually receiving benefits.  It is not disputed that DSSD benefits are not actually received by the insured, but the Plan in the instant matter does not require the

13

insured to be the one receiving the benefits.  Thus, the cases cited by Plaintiffs are not applicable to the instant matter.

Because the Plan in the instant matter allows for the benefits to be received by the insured or his family, and does not require the insured to be the one receiving the benefits, the above cases are distinguishable from the instant matter.  <u>Hampton</u> and <u>Brandon</u>, on the other hand, while not explicitly requiring the benefits to be paid for loss of income, provide support for the idea that Social Security benefits paid to dependents are for loss of income.  Additionally, in <u>Fortune</u>, the court found the plan to unambiguously allow LTD benefits to be offset by DSSD benefits even though the plan stated that the benefits must be for loss of income.

While recognizing that none of the cases cited by Plaintiffs or Defendant are binding on this Court, this Court finds <u>Fortune</u> persuasive, as it deals with nearly identical plan language.  That result is supported by <u>Hampton</u>, an unpublished Sixth Circuit case. Additionally, this Court must review the plan administrator's decision to interpret the plan to include DSSD benefits in the definition of OIB under an arbitrary and capricious standard.  Defendant's plan states that OIB include Social Security payments made to the insured or his family and the decision to include DSSD benefits in that definition is supported by case law.  Thus, this Court cannot say that the plan administrator's decision was arbitrary or capricious, even taking into consideration Defendant's potential conflict of interest.

14

### C. Attorneys' Fees

In addition to a declaration that Plaintiffs are not required to refund the overpayment of David Pennell's LTD benefits, Plaintiffs seek an award of attorneys' fees.  (Dkt. # 22-2 at 10).  Under section 502(g) of ERISA, "in any action under this title by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1). There is no requirement that the party awarded attorneys' fees be the prevailing party. Miller v. United Welfare Fund, 72 F.3d 1066, 1074 (2d Cir. 1995).

A court should consider several factors in determining whether to award attorneys' fees, including: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. Donovan v. Cunningham, 716 F.2d 1455, 1475 (5th Cir. 1983).

In the instant matter, both parties could have reasonably concluded that their interpretation of the plan language was correct and supported by law.  There was no bad faith on the part of either party, and the relative merit of their positions was similar.  In this case, award of costs is not necessary, and thus, each side shall bear its own legal fees and costs.  Wulah, 2007 U.S. Dist. LEXIS 82650, at *25.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment on the Administrative Record is **GRANTED**.  (Dkt. # 21).  Plaintiffs' Motion for Summary Judgment is **DENIED**.  (Dkt. # 22).  Plaintiffs' request for attorneys' fees is **DENIED**. Defendant shall submit an accounting of the current amount owed in repayment as a result of the overpayment made to Plaintiffs under the Plan.

**IT IS SO ORDERED.**

**/s/ Peter C. Economus – January 20, 2010**
**PETER C. ECONOMUS**
**UNITED STATES DISTRICT JUDGE**